United States District Court
Southern District of Texas
FILED

MAY 0 6 2026

Nathan Ochsner, Clerk

United States District Court
Southern District of Texas
**ENTERED**
May 06, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **JUDY TANGUMA, as Next Friend of J.I.S., a Minor,** *et al.*, | § § § | |
| **Plaintiffs,** | § § § | |
| **VS.** | § § | **CIVIL ACTION NO. 7:25-CV-0405** |
| **CITY OF MISSION, TEXAS,** *et al.*, | § § § | |
| **Defendants.** | § | |

### REPORT AND RECOMMENDATION

Plaintiff JUDY TANGUMA, as next friend of J.I.S., a Minor, and ANGEL GABRIEL SALINAS (collectively, "Plaintiffs") bring this civil action against the City of Mission, Texas ("Mission"), the City of McAllen, Texas ("McAllen"), and Antonio Garcia, individually and in his official capacity as a SWAT team officer for Mission and a peace officer for McAllen ("Officer Garcia"). The factual allegations giving rise to this civil action begin with the death of Gabriel Salinas, who engaged in a shootout with police officers of the Mission Police Department. Officer Garcia was assigned to a SWAT team dispatched to the scene. In responding to the shootout, the SWAT team captured digital images of Salinas' physical remains. Officer Garcia obtained one such image and disseminated it to friends and acquaintances on a private chat group. The image then spread on social media, such that it eventually came to the attention of and was seen by Plaintiffs. Based on the live pleadings, Plaintiffs seek relief against Mission, McAllen, and Officer Garcia under the deprivation of civil rights statute, 42 U.S.C. § 1983 (Dkt. No. 1-7 at 12-15), while also raising state law causes of action against Officer Garcia for invasion of privacy and intentional infliction of emotional distress (*id.* at 10-12).

1 / 14

Pending now are dispositive motions filed by Mission and McAllen. McAllen has filed a *Motion to Dismiss* (the "Motion") (Dkt. No. 4) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. McAllen takes the position that Plaintiffs have failed to state a claim because the pleadings do not raise sufficient factual allegations to support municipal liability under § 1983. (*Id.* at 4-6). Plaintiffs have filed a response in opposition to the Motion (Dkt. No. 13), arguing that the live pleadings sufficiently allege municipal liability (*id.* at 3-5). In the alternative, Plaintiffs seek leave to amend the pleadings to correct any deficiencies. (*Id.* at 5).

These matters have been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed the briefs, the pleadings, and the law, the Magistrate Judge RECOMMENDS that the Motion (Dkt. No. 4) be GRANTED to the extent that McAllen seeks dismissal of Plaintiffs' § 1983 claim against it. Nevertheless, the Magistrate Judge further RECOMMENDS that Plaintiffs be afforded an opportunity to amend their pleadings. Any dispositive issues relating to Mission are addressed through a separate, contemporaneous report and recommendation.

## I. PROCEDURAL BACKGROUND

On June 12, 2025, Plaintiffs filed an original petition in Texas state court. (Dkt. No. 1-6).

The following day, Plaintiffs filed a *First Amended Petition* (Dkt. No. 1-7), which represents the live pleadings. The live pleadings do not appear to make any material changes to the original pleadings in terms of the named defendants, factual allegations, causes of action, or requests for damages.

On August 12, 2025, McAllen removed the action from state court based on this court's federal question jurisdiction. (Dkt. No. 1). Mission did not object to the removal. As for Officer

Garcia, there is no indication from the record that he has been served with process, and he has not otherwise made an appearance.

On September 2, 2025, McAllen moved to dismiss through the Motion (Dkt. No. 4), which was followed by Plaintiffs' response (Dkt. No. 13).

## II. FACTUAL ALLEGATIONS

The live pleadings raise the following factual allegations.

On or about July 30, 2020, officers with the Mission Police Department responded to a domestic disturbance at a residence in Mission. (Dkt. No. 1-7 at 5). At the residence, officers encountered an armed Gabriel Salinas, who fired in the officers' direction. (*See id.*). The officers retreated from the residence and sent out a radio call for backup. (*Id.*). Salinas continued to fire at the officers from inside the residence, and the officers returned fire. (*See id.*). Salinas eventually stopped shooting, after which the Mission Police Department's SWAT team arrived. (*See id.* at 5-6). The SWAT team deployed a remote-controlled robot to enter the residence and locate Salinas. (*Id.* at 6). Through a live video feed from a camera mounted on the robot, officers observed Salinas' deceased body, which bore gunshot wounds and lay naked in a pool of blood. (*Id.*). As part of the police operation, a digital screenshot was taken of the video feed. (*Id.*).

Plaintiffs allege that Officer Garcia obtained the screenshot by way of his assignment to the SWAT team, although he was employed at the time by McAllen as a peace officer. (*See id.* at 7). According to Plaintiffs, after Officer Garcia loaded the image to a personal electronic device, he then sent it out for non-law enforcement purposes to a WhatsApp group chat dedicated to racing enthusiasts. (*See id.*). The image was shared by chat members with others over social media platforms like Facebook and Twitter. (*See id.* at 7-8). Plaintiff Judy Tanguma was made aware by friends and family that the image of Salinas' body was being shared over social media. (*See*

*id.*) Plaintiff Angel Salinas, who was fifteen years old at the time of Salinas' death, eventually found the image of his father, and Salinas' younger son, J.I.S., came to learn of the shared image as well. (*See id.* at 8-9).

For purposes of municipal liability, Plaintiffs allege that "[McAllen] failed to adequately train and supervise [Officer Garcia] and ensure that no officer shared photographs, video, screenshots, or other visual depictions of human remains for personal, non-law enforcement purposes." (*Id.* at 14). Nor did McAllen "establish a policy or procedure addressing the treatment of human remains, including the taking and sharing of photographs of human remains." (*Id.*). According to Plaintiffs, when Officer Garcia shared the image, "[McAllen was] aware that the taking of unnecessary death images and dissemination of death images for non-law enforcement purposes [was] a widespread problem in law enforcement." (*Id.* at 14-15). Plaintiffs also allege that McAllen failed to "investigate or discipline" Officer Garcia for his conduct. (*Id.* at 15).

### III. CAUSE OF ACTION

As against McAllen, Plaintiffs raise a claim of municipal liability under § 1983, predicated on the violation of their Fourteenth Amendment rights to due process. (*See* Dkt. No. 1-7 at 12-15). When the screenshot of Salinas was shared with the public, Plaintiffs claim, they were deprived "of the right to control the physical remains, memory, and death image of their deceased father and family member." (*Id.* at 13). Plaintiffs contend "[t]here is a due process right to privacy and family integrity guaranteed by the Fourteenth Amendment . . . and recognized by courts across the United States." (*Id.* (citing *Marsh v. Cnty. of San Diego*, 680 F.3d 1148 (9th Cir. 2012))).

## IV. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for the "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). Surviving a Rule 12(b)(6) motion means pleading "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible where the factual allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Also insufficient are merely "speculative" inferences, and any purely legal conclusions should be ignored. *See Ghedi v. Mayorkas*, 16 F.4th 456, 463 (5th Cir. 2021) (citing *Twombly*, 550 U.S. at 555). On a Rule 12(b)(6) motion, all well-pleaded facts are accepted as true and viewed in the plaintiff's favor. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

### B. Rule 15(a) Leave to Amend

Where a plaintiff's claims have been dismissed for the failure to state a claim, a court should assess whether to allow them leave to amend their pleadings under Rule 15(a). *See Bancroft Life & Cas. ICC, Ltd. v. GRBR Ventures, LP*, 12 F. Supp. 3d 980, 989 (S.D. Tex. 2014). Rule 15(a) of the Federal Rules of Civil Procedure generally "evinces a bias in favor of granting leave to amend." *Dussuoy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). Leave to amend should not be denied unless there is a "substantial reason" to do so. *Id.* at 598. One such reason is where the amendment would be futile. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000). Accordingly, unless the defects are clearly incurable, a court should afford the plaintiff

at least one opportunity to cure pleadings deficiencies before outright dismissing a case under Rule 12(b)(6). *See Bancroft Life*, 12 F. Supp. 3d at 989.

## C. Section 1983

The § 1983 statute "creates a private right of action for redressing violations of federal law by those acting under color of state law." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The violation of law must involve the deprivation of rights or privileges secured by federal statute or constitutional norms. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To act under the color of law means to act under the "pretense" of law. *Screws v. United States*, 325 U.S. 91, 111 (1945). Municipalities and cities qualify as persons liable to suit under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

That said, a municipality cannot be held liable under § 1983 based on a respondeat superior theory. *Id.* at 691. "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In other words, there must be both municipal culpability and causation. *Id.* at 578 n.17. The official action may come by way of an official policy or custom attributable to an official policymaker. *Id.* at 578.

Therefore, municipal liability consists of three elements: (i) an official policy or custom; (ii) a policymaker who can be charged with actual or constructive knowledge of the policy or custom; and (iii) a violation of constitutional rights whose "moving force" is the policy or custom. *Cano v. Harlandale Indep. Sch. Dist.*, 2020 WL 7385843, at *5 (W.D. Tex. Dec. 16, 2020) (citing *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015)).

An official policy includes: (i) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; and (ii) a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam)) (quotations omitted).

Alternatively, the policy requirement may be satisfied by the policymaker's affirmative failure to act, provided such failure amounts to deliberate indifference. *See Buehler v. City of Austin/Austin Police Dep't*, 2014 WL 12776539, at *13 (W.D. Tex. July 24, 2014) (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999)), *aff'd*, 824 F.3d 548 (5th Cir. 2016).

"Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of [their] action[,]" for which "[a] showing of simple or even heightened negligence will not suffice." *Valle v. City of Houston*, 613 F.3d 536, 542, 547 (5th Cir. 2010) (quoting *Piotrowski*, 237 F.3d at 579) (internal quotations omitted). To satisfy this requirement, the plaintiff must generally show a pattern of similar constitutional violations, which shows that policymakers have conscious disregard for the consequences of their action. *Vess v. City of Dallas*, 2022 WL 625080, at *8 (N.D. Tex. Mar. 3, 2022) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)) (quotations omitted). Otherwise, the plaintiff must show "that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

A plaintiff may also plead municipal liability under the separate, but related, theory of the failure to train or supervise. *See Vess*, 2022 WL 625080, at *8; *see also Martinez v. City of Alton*, 2018 WL 1333884, at *3 (S.D. Tex. Mar. 15, 2018). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train[,]" *Connick*, 563 U.S. at 61, such that the theory is rarely applied, *see Martinez*, 2018 WL 1333884, at *3 (citing *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841 (S.D. Tex. 2011)). To establish municipal liability under this theory, the plaintiff must show that: (i) a supervisor failed to supervise or train a subordinate, or the training procedures were inadequate; (ii) a causal link exists between the failure and the constitutional violation; and (iii) the supervisor was deliberately indifferent. *Yara v. Perryton Indep. Sch. Dist.*, 560 F. App'x 356, 360 (5th Cir. 2014) (per curiam) (citing *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir.2005)); *see also Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011). Mere negligence or even gross negligence is not enough; a plaintiff usually must demonstrate a pattern of constitutional violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. *Yara*, 560 F. App'x at 360 (quoting *Est. of Davis*, 406 F.3d at 381) (quotations omitted).

A plaintiff must "allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Where the subordinate employee in question received minimum state training, a plaintiff must prove that the legal minimum training is itself inadequate. *See Martinez*, 2018 WL 1333884, at *3 (citing *Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010)).

"Though [a plaintiff] need not offer proof of [their] allegations at [the pleadings] stage, [they] must still plead facts that plausibly support each element of § 1983 municipal liability[.]" *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678).

8 / 14

Insofar as a policy or custom is alleged, "[t]he description of [that] policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

## V. ANALYSIS

The Magistrate Judge will address in turn the sufficiency of Plaintiffs' claim of municipal liability under § 1983 and whether to allow Plaintiffs leave to amend to cure the deficiencies with their pleadings.

### A. Municipal Liability

McAllen raises a global issue over whether Plaintiffs have sufficiently pleaded the elements of municipal liability under any of the various theories alleged. (Dkt. No. 4 at 4-6).

Again, Plaintiffs invoke municipal liability based on McAllen's failure to (i) establish a policy for addressing the treatment of human remains and sharing of photographs of human remains, (ii) adequately train and supervise Officer Garcia concerning the sharing of images of human remains for non-law enforcement purposes, and (iii) investigate or discipline Officer Garcia for his conduct. (Dkt. No. 1-7 at 14-15).

As a general matter, McAllen argues that the pleadings fail to refer to any unwritten custom that violated Plaintiffs' rights. (*See* Dkt. No. 4 at 5). Otherwise, McAllen contends that the pleadings do not adequately allege deliberate indifference associated with the failure to establish a policy or procedure. (*See id.* at 5-6). Nor do the pleadings, McAllen continues, support deliberate indifference for purposes of a failure-to-train theory. (*See id.*).

In response, Plaintiffs generally rely on the ostensible sufficiency of their pleadings. (*See* Dkt. No. 13 at 3-5). According to Plaintiffs, their "pleading that [McAllen] failed to properly train [Officer Garcia] is sufficient to state a plausible claim for relief at this early stage . . . ." (*Id.* at 4).

The Magistrate Judge concludes that the live pleadings are insufficient to state a claim of municipal liability under § 1983.

As a threshold matter, the Magistrate Judge concludes that the pleadings fail to refer to either an explicit or unstated policy that violated Plaintiffs' constitutional rights. Indeed, any unstated policies may be based on a persistent, widespread practice of a government entity's officials or employees, *Brown*, 219 F.3d at 457, or, in other words, a "pattern or practice," *see Miranda v. Bexar Cnty.*, 2024 WL 314055, at *4 (W.D. Tex. Jan. 26, 2024) (citing *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017)). To sufficiently plead a pattern or practice, a plaintiff must do more than describe the incident giving rise to their injury. *Peña*, 879 F.3d at 622. Pleading a pattern involves describing other incidents that are sufficiently similar, specific, and numerous. *Mills v. Connelly*, 2024 WL 4799884, at *5 (M.D. La. Aug. 21, 2024) (citing *Davidson*, 848 F.3d at 396). A pattern requires similarity and specificity, such that prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question. *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Est. of Davis*, 406 F.3d at 383) (quotations omitted). In terms of numerosity, the description of one or even two prior incidents is generally not enough to plead a pattern. *See Prince v. Curry*, 423 F. App'x 447, 451 (5th Cir. 2011) (per curiam); *see also Lewis v. Williamson Cnty.*, 2022 WL 17823692, at *10 (W.D. Tex. Dec. 20, 2022) (citing *Vess*, 2022 WL 625080, at *6); *Garcia v. Harris Cnty.*, 2024 WL 1291531, at *4 (S.D. Tex. Mar. 26, 2024), *opinion vacated on reconsideration on other grounds*, 2024 WL 5205920 (S.D. Tex. Nov. 13, 2024). On the other end of the spectrum, the Fifth Circuit recently held that the detailing of a total of 23 prior cases involving the failure to provide adequate medical care to inmates was enough to state a claim as to the existence of a policy. *See Bond v. Nueces Cnty.*, 2022 WL 4595000, at *4-5 (5th Cir. Sept. 30, 2022). Pointing

10 / 14

to a potential floor, in one case, the Western District of Texas deemed that a pattern had been sufficiently stated based on allegations of three similar cases. *See Carrazco v. Cnty. of Bexar*, 2020 WL 13896861, at *3 (W.D. Tex. Feb. 24, 2020); *see also Barr v. City of San Antonio*, 2006 WL 2322861, at *4 (W.D. Tex. July 25, 2006) (pattern alleged based on four similar lawsuits).

Here, besides the situation involving Officer Garcia, the pleadings do not refer to any other specific instances of law enforcement officers engaged in the sharing of images of deceased bodies gathered from crime scenes. The best Plaintiffs do is allege that McAllen was "aware that the taking of unnecessary death images and dissemination of death images for non-law enforcement purposes [was] a widespread problem in law enforcement." (Dkt. No. 1-7 at 14-15). But this general statement does not seemingly implicate prior conduct within the ranks of McAllen's police force or any of its other employees.

Turning to Plaintiffs' specified theories of municipal liability, the failure to establish a policy and failure to train or supervise are both based on the circumstance that the relevant policymaker acted or failed to act with deliberate indifference. *See Buehler*, 2014 WL 12776539, at *13. A policymaker's deliberate indifference may be inferred from a pattern of similar constitutional violations. *See Vess*, 2022 WL 625080, at *6; *see also Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019). As stated, however, the pleadings fail to refer to any pattern whatsoever. Theoretically, a policymaker's conscious disregard can be inferred from a single incident, such that the plaintiff must show "that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *Littell*, 894 F.3d at 624 (quoting *Brown*, 520 U.S. at 409). Such an inference, however, "is possible in only very narrow circumstances[,]" *id.* at 624-25, for instance, where a municipality arms its police officers but fails to train them in the use of deadly force, *see Peña*, 879 F.3d at 624 (citing

*City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). Moreover, "the single-incident exception 'is generally reserved for those cases in which the government actor was provided no training whatsoever.'" *Hill v. Turknett*, 2020 WL 3872743, at *7 (N.D. Tex. July 9, 2020) (quoting *Peña*, 879 F.3d at 624)). Here, Plaintiffs do not allege that McAllen failed to train Officer Garcia at all, but, rather, that McAllen failed to adequately train him in the specific area concerning the sharing of images of human remains for non-law enforcement purposes. *See id.*

Lastly, Plaintiffs claim that McAllen effectively ratified Officer Garcia's conduct by failing to investigate or discipline him. Ratification theory generally requires that a policymaker knowingly approve, not just a subordinate's actions, but also the improper basis for those actions. *Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020) (per curiam) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Unless conduct is "manifestly indefensible," a policymaker's mistaken defense of a subordinate who is later found to have broken the law is not ratification chargeable to the municipality. *Id.* (quoting *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)) (quotations omitted). The Fifth Circuit's "precedent has limited the theory of ratification to 'extreme factual situations.'" *Peterson*, 588 F.3d at 848 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)). The quintessential case is that of *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), where a municipality was found liable upon ratifying the conduct of officers who "poured" gunfire on a truck, killing an innocent occupant. In *Grandstaff*, the "officers and their supervisors . . . denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability." *Id.* at 166. Here, there is nothing from the pleadings to suggest that the incident at issue presents an extreme factual situation within the meaning of applicable precedent. *See Peterson*, 588 F.3d at 848; *see also Reed v. City of Lago Vista*, 2022 WL 432563, at *4-5 (W.D. Tex. Feb. 10, 2022), *report and recommendation*

12 / 14

*adopted,* 2022 WL 22257843 (W.D. Tex. Mar. 11, 2022). Moreover, as with Plaintiffs' other theories of municipal liability, establishing ratification generally requires a pattern of similar constitutional violations. *See Vess,* 2022 WL 625080, at *6. But again, Plaintiffs fail to make this showing, nor do they otherwise claim that McAllen failed altogether to train Officer Garcia.

## B. Leave to Amend

Insofar as Plaintiffs fail to state a claim for relief, the question becomes whether they should be allowed the opportunity to amend their pleadings. As noted, unless a party's pleading defects are clearly incurable, they should generally be afforded at least one opportunity to cure those defects before outright dismissal. *See Bancroft Life,* 12 F. Supp. 3d at 989. Here, although Plaintiffs have amended their pleadings once before, the court has not previously considered the sufficiency of those pleadings. Also, many of the pleading deficiencies noted above are seemingly curable. Accordingly, the Magistrate Judge concludes that Plaintiffs should be allowed leave to amend. *See Guerra v. Childress Cnty.,* 2024 WL 4673928, at *7 (N.D. Tex. Nov. 4, 2024) (granting leave to amend where plaintiff amended complaint once before in response to a motion to dismiss but the court had not ruled on the prior motion).

## VI. CONCLUSION

### *Recommendation*

For these reasons, the Magistrate Judge RECOMMENDS that the Motion (Dkt. No. 4) be GRANTED to the extent that McAllen seeks dismissal of Plaintiffs' § 1983 claim against it. Nevertheless, the Magistrate Judge further RECOMMENDS that Plaintiffs be afforded an opportunity to amend their pleadings.

### *Notice to the Parties*

Within fourteen (14) days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file written objections within fourteen (14) days after service shall bar an aggrieved party from de novo review by the District Judge on an issue covered in this report and from appellate review of factual findings accepted or adopted by the District Judge, except on grounds of clear error or manifest injustice.

### *Directive to Clerk of Court*

The Clerk of Court is DIRECTED to serve the parties with a copy of this document by any receipted means.

DONE at McAllen, Texas this 6th day of May 2026.

J. SCOTT HACKER
United States Magistrate Judge